IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3709

EQUIPMENTSHARE.COM INC,

    Plaintiff(s),

v.

AHERN RENTALS, INC., a Nevada Corporation,
ELLIOT VIGIL,

    Defendant(s).

## COMPLAINT AND JURY DEMAND

Plaintiff EquipmentShare.com Inc ("EquipmentShare") alleges the following causes of action against Defendants Ahern Rentals, Inc. ("Ahern") and Elliott Vigil ("Vigil") (collectively "Defendants") as follows:

### I. INTRODUCTION

1. This action concerns Ahern's unlawful targeted conduct directed at EquipmentShare to disrupt its business operations, interfere with its current and prospective business and employment relationships, manufacture claims against it, and damage its reputation in the industry.

2. In or around spring 2019, Ahern identified EquipmentShare as a growing threat to its business after several of its employees left to work for EquipmentShare. Unsurprisingly, when

those employees, who had no non-compete obligations, left Ahern, many of their customers left with them.

3. Rather than compete in the free marketplace by offering better compensation and working conditions to retain its employees, or better services at better values to retain its customers, Ahern resorted to intimidation, subterfuge, and coercion, sending a message that Ahern will not tolerate its employees exercising their right to seek employment with a competitor. It also sought to send a message to EquipmentShare that it would litigate EquipmentShare out of existence if EquipmentShare did not stop outcompeting Ahern in the marketplace.

4. To date, Ahern's unlawful efforts to create a de facto "no poach" hedge around its labor force and damage EquipmentShare's business relationships include: (1) engaging in illegal wiretapping to obtain confidential and other business information and attempt to elicit incriminating statements from EquipmentShare's upper management for the purpose of using such information and statements to manufacture legal claims against EquipmentShare and former Ahern employees; (2) engaging in illegal wiretapping and corporate espionage to gather confidential, proprietary, and other business information about EquipmentShare to disrupt EquipmentShare's business relationships, operations, and future plans; (3) threatening to stop or reduce its business with lenders and other third parties who have established or are considering establishing business relationships with EquipmentShare; and (4) engaging in a scorched-earth litigation campaign, consisting of a series of duplicative, harassing, and unsupported lawsuits, along with related litigation tactics to harass EquipmentShare by abusing the judicial system.

5. As a direct and proximate result of Defendants' unlawful, tortious conduct, EquipmentShare has suffered economic losses—including, but not limited to, lost investment and other business opportunities, wasted time and productivity, and lost customers—as well as irreparable harm to its reputation.

## II. PARTIES

### A. Plaintiff

6. Plaintiff EquipmentShare is a Delaware corporation with its principal place of business in Columbia, Missouri.

7. EquipmentShare is a construction technology provider that develops modern-day equipment technology solutions for contractors across the country. It operates rental yards in multiple locations across the United States providing construction professionals with heavy equipment rental services, smart jobsite solutions, and asset management products. Jabbok Schlacks ("Schlacks") and William Schlacks founded EquipmentShare in 2014.

### B. Defendants

8. Defendant Ahern is a Nevada corporation with its principal place of business in Las Vegas, Nevada. Ahern operates its rental business throughout the United States, in over 30 states and 90 locations, including a location in Kansas City, Kansas, through which it transacts business in the state of Missouri.

9. Defendant Elliot Vigil is an individual who, on information and belief, resides in or near Denver, Colorado. Upon information and belief, Vigil, formerly a Branch Manager for Ahern, is currently Ahern's National Sales Trainer.

### III.　JURISDICTION AND VENUE

10.　The Court has jurisdiction under 28 U.S.C. § 1331 because the allegations arise under the Electronic Communications Privacy Act, 18 U.S.C. § 2511.  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because they form the same case or controversy as the claims providing the Court with original jurisdiction.

11.　The Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.  EquipmentShare is a citizen of Delaware and Missouri.  Defendant Ahern is a citizen of Nevada, and Defendant Vigil is a citizen of Colorado.

12.　The Court has personal jurisdiction over Defendants because they directed and participated in a scheme to deceive EquipmentShare within this District, namely at Ted's Montana Grill in Denver, Colorado, and Ahern transacts business in this District from its office in Centennial, Colorado located at 15427 E Fremont Dr, Centennial, CO 80112.

13.　Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, namely at Ted's Montana Grill in Denver, Colorado, and Defendants are subject to personal jurisdiction in this Court.

14.　Defendants are subject to specific personal jurisdiction in this Court because they are residents of Colorado and/or purposefully directed their intentional and wrongful acts in the State of Colorado.

15. This case also involves the same subject matter as a pending multidistrict litigation in the United States District Court for the Western District of Missouri entitled *In re: Ahern Rentals, Inc. Trade Secret Litigation*, Case No. 20-02945-MD-C-BP (hereinafter "MDL Proceeding"), and is therefore a tag-along action to be transferred to that MDL proceeding at a later date. **See Exhibit A**- Notice of Related Cases.

## IV. FACTUAL BACKGROUND

### A. EquipmentShare

16. EquipmentShare was founded in late 2014, to help solve the productivity crisis facing the construction industry, which currently results in approximately 1.6 trillion dollars per year in lost value.

17. EquipmentShare's solution—to connect jobsites through technology and distribution—empowers contractors and other construction industry professionals to close the productivity gap and take a revolutionary leap forward in increasing safety and efficiency in all aspects of their business.

18. EquipmentShare's connected jobsite strategy focuses on the three verticals of construction jobsites: assets (or "equipment"), people, and materials. The asset vertical consists of owned assets and rented assets. EquipmentShare's Internet of Things (IoT) solution, "EquipmentShare Track," connects every asset to a secure cloud enabling measurement of data across owned and rented assets thereby allowing EquipmentShare Track software to deliver powerful insights to EquipmentShare customers resulting in increased productivity, reduced costs, and increased safety.

19. The synergy between EquipmentShare's technology and distribution—which its rental businesses is a part of—has proven to be an unbeatable value proposition for EquipmentShare's customers, has fueled EquipmentShare's rapid growth, and is revolutionizing the way contractors rent, purchase, manage, and maintain their equipment.

**B.     Ahern**

20. Ahern is the largest privately held equipment rental business in the country. It has been in the industry for over 60 years and has over 90 locations.

21. As a result of EquipmentShare's success and continued growth, Ahern is actively trying to emulate EquipmentShare's business model by taking steps to try and close the gap between its service offerings and those available through EquipmentShare. For example Ahern recently announced a partnership with a third party telematics company in the hope that it will be able to provide its customers with a telematics solution within the next three years.

22. Ahern did not require employees to sign non-competition and customer non-solicitation agreements until recently. Ahern has a long history of vigorously opposing the enforcement of such agreements in the industry, including by, on information and belief, encouraging its employees on multiple occasions to disregard post-employment non-competition obligations they owed to their former employers.

23. During the last several years, and perhaps far longer, Ahern's workplace environment has caused its workforce to seek better opportunities elsewhere. Coupled with Ahern's decision to not use customer non-solicitation and non-competition agreements to restrict

its employees' post Ahern career options, large numbers of its workforce has sought to leave Ahern without any contractual barriers to doing so.

### C. Defendants' Conspiracy to Entrap EquipmentShare, Solicit Confidential Information, and Concoct Wrongful Solicitation and Other Claims Through Lies and Deception

24. A small fraction of EquipmentShare's current workforce consists of former Ahern employees. Consistent with its work environment that has caused numerous employees to leave, Ahern has recently taken the dramatic step of suing EquipmentShare and its former employees across the country. Despite Ahern's false claims in these other cases across the country (many of which are now consolidated in the MDL Proceeding), EquipmentShare does not target "Ahern" employees or its confidential information. Rather, EquipmentShare simply aims to hire employees who can succeed in the jobs for which they are hired. Unsurprisingly, this includes many employees with prior experience working with other industry players, including Ahern.

25. Many former Ahern employees do not have non-competition or customer non-solicitation agreements with Ahern. Ahern has nevertheless sought to restrict these employees from leaving Ahern to work for competitors through other coercive efforts, including litigation. Specifically, Ahern has filed numerous actions in state and federal courts across the country to entangle both its former employees and EquipmentShare in costly, frivolous, and/or duplicative lawsuits. This has resulted in a series of nearly 30 lawsuits against EquipmentShare and/or its employees at the time of this filing, many of which are based on nothing more than conclusory

allegations and the simple fact that the employee left Ahern and then joined EquipmentShare.[1] EquipmentShare believes Ahern intends these lawsuits to coerce EquipmentShare into observing a tacit "no poach" agreement, whereby EquipmentShare would refuse to consider job applicants Ahern once employed, and to scare Ahern employees away from considering employment with EquipmentShare in the future.

26. Ahern's cases all hinge upon Ahern's false claims that EquipmentShare and its employees are part of a grand scheme to steal Ahern's confidential and trade secret information. But, as Ahern knows, there was no such scheme and no such information theft. Thus, when Ahern unleashed its litigation onslaught, it knew it raced against time to: (1) overwhelm EquipmentShare with legal costs and force it to settle on Ahern's terms; and/or (2) attempt to trick EquipmentShare employees and management into making statements that Ahern could use to create a conspiracy from whole cloth.

27. Against this backdrop, Ahern, through its now "National Sales Trainer," Elliot Vigil, crossed the line from abusive, bad faith litigation tactics to outright illegal and tortious conduct. Specifically, Defendants conspired to commit tortious, fraudulent, and unlawful acts against EquipmentShare, including conspiring to induce and entrap EquipmentShare's officers and/or employees into revealing confidential and competitive business information and making

---

[1] Based on this and other bad behavior, EquipmentShare has a pending abuse of process claim against Ahern pending in the United States District Court for the Western District of Missouri entitled *EquipmentShare.com Inc v. Ahern Rentals, Inc. and Cory Rosencranse*, Case No. 2:20-cv-14116-BP.

purportedly unlawful statements that Ahern could twist and misconstrue into a basis for its multitude of lawsuits against EquipmentShare.

28. In or around June 2019, Vigil, then a Branch Manager for Ahern, sought to speak with EquipmentShare executives and management under the guise that he was looking for a job at EquipmentShare. In reality, Vigil sought access to EquipmentShare's upper management to learn confidential and competitive business information for use at and by Ahern and to potentially entrap EquipmentShare management personnel into providing facts that may support Ahern's baseless lawsuits against EquipmentShare.

29. Vigil's efforts culminated in a dinner at Ted's Montana Grill in Denver, Colorado that included Vigil, his wife, Jabbok Schlacks, and EquipmentShare Vice President of Sales, Zachary Sullivan, for the purpose of discussing potential job opportunities for Vigil at EquipmentShare. During the dinner, Vigil expressed his interest in working for EquipmentShare.

30. EquipmentShare recently learned that that this dinner was a farce.  In fact, Vigil had no interest in pursuing job opportunities at EquipmentShare whatsoever.  Instead, Vigil's efforts in meeting with EquipmentShare were in furtherance of his conspiracy with Ahern to solicit confidential and competitive business information and other statements from Schlacks and Sullivan. On information and belief, Vigil recorded the dinner conversation without the knowledge or consent of Schlacks or Sullivan, believed to be through use of a recording device which he had hidden in his wife's purse.

31. Naturally, Schlacks and Sullivan expected their conversation with Vigil would be confidential. In forming this belief and agreeing to meet, Schlacks and Sullivan relied on Vigil's

9

misrepresentations made to them regarding the purpose of the dinner: that it was to discuss Vigil's interest in employment opportunities at EquipmentShare.

32. On December 13, 2019, Ahern publicized carefully selected excerpts of the recording omitting critical details in a seventeen count lawsuit (the "RICO Action") that is now consolidated in the MDL Proceeding, alleging that EquipmentShare violated the Federal Racketeer Influenced and Corrupt Organizations Act, a statute inexorably linked in the public consciousness with organized crime.

33. As a direct result of Ahern's unlawful and tortious conduct to manufacture claims against it, EquipmentShare has incurred significant legal fees and lost business, including a recent nearly-executed lease agreement which was lost when the landlord stated he "will never sign the lease, end of negotiation" after having "read [the] court case's [sic]."

34. EquipmentShare believes that Ahern continues using the Vigil recording and others it has made under similar circumstances to make false accusations against EquipmentShare, harming its reputation in the tight-knit, competitive equipment rental industry.

## V. CLAIMS

### COUNT I – VIOLATION OF 18 U.S.C. § 2511

**(Against All Defendants)**

35. Plaintiff incorporates and realleges paragraphs 1 through 34, inclusive, as though fully set forth herein.

36. In violation of 18 U.S.C. § 2511(1)(a), at Ahern's direction, Vigil used, and Ahern procured for Vigil to use, a concealed electronic, mechanical, or other device to make one or more

audio recordings by intercepting the oral communications of EquipmentShare's CEO and Vice President of Sales, and Defendants knew or had reason to know that device had been transported in interstate commerce.

37. In violation of 18 U.S.C. § 2511(1)(b)(iii), at Ahern's direction, Vigil used, and Ahern procured for Vigil to use, a concealed electronic, mechanical, or other device to make one or more audio recordings by intercepting the oral communication of EquipmentShare's CEO and Vice President of Sales. Further, Defendants knew or had reason to know that device had been transported in interstate commerce.

38. In violation of 18 U.S.C. § 2511(1)(b)(iv), at Ahern's direction, Vigil used, and Ahern procured for Vigil to use, a concealed electronic, mechanical, or other device to make one or more audio recordings by intercepting the oral communications of EquipmentShare's CEO and Vice President of Sales on the premises of a restaurant, *i.e.*, a business with operations that affect interstate commerce, and specifically a national chain restaurant, and Vigil recorded the conversation as part of a scheme to obtain information about and to harm Plaintiff's operations and business, which affect interstate commerce.

39. On information and belief, Defendants endeavored to use and disclose the contents of the intercepted oral communications knowing or having reason to know that the information was obtained through the interception of an oral communication in violation of this statute, in violation of 18 U.S.C. § 2511(c) and (d).

40. Defendants intercepted the oral communications for the purpose of committing and facilitating tortious acts including, but not limited to, illegally spying on EquipmentShare to

11

discover its growth plans and to gather other strategic business information from and to use against EquipmentShare, and fraudulently misrepresenting Vigil's interest in employment with EquipmentShare to fabricate an alleged unlawful "solicitation" and "evidence" to support lawsuits Ahern asserts against EquipmentShare to tarnish its reputation and destroy its business.

41. Plaintiff and Schlacks reasonably and justifiably expected that Schlacks' oral communications would not be subject to interception based on the circumstances. 18 U.S.C. § 2510(2). Neither Plaintiff, Schlacks, nor Sullivan consented to Defendants' recording of the oral communication.

42. Plaintiff EquipmentShare qualifies as an aggrieved person under the statute because the illegal interception of EquipmentShare's CEO's and Vice President of Sales' oral communications was illegally intercepted in the context of their roles as CEO and Vice President of Sales of EquipmentShare, respectively, and was an interception directed at EquipmentShare. 18 U.S.C. § 2510(6) & (11). As such, Plaintiff is authorized to seek injunctive relief, civil damages (including both actual and statutory damages), punitive damages, and reasonable attorneys' fees and costs under 18 U.S.C. § 2520.

43. As a result of Defendants' violations, EquipmentShare has suffered significant actual damages in an amount to be proven at trial. These damages include Plaintiff's employees' and agents' time spent meeting with Vigil and other Ahern employees based on false pretenses as well as the time and resources spent to refute allegations in Ahern's meritless and fabricated lawsuits based on these mischaracterized and illegally recorded conversations instead of spending time lawfully growing its business and improving the equipment rental industry. Additionally,

Plaintiff's reputation has been damaged among potential and existing customers, business partners, investors, and prospective talent. Plaintiff has also suffered and may continue to suffer damages through the loss of current or prospective business relationships with investors, customers, business partners, and prospective talent based on Defendants' unlawful interception and disclosure of the oral communication and by Ahern's use of the information discussed to unlawfully compete with EquipmentShare.

### COUNT II– FRAUDULENT MISREPRESENTATION AND NONDISCLOSURE
### (Against Defendants)

44. Plaintiff incorporates and realleges paragraphs 1 through 43, inclusive, as though fully set forth herein.

45. Vigil, at the direction of and in his capacity as an employee of Ahern, made false misrepresentations and/or failed to disclose his true motivations to EquipmentShare employees and agents to secure a private meeting with Schlacks and Sullivan and made false representations in communications leading up to and at the June 2019 dinner. These misrepresentations and/or failures to disclose material information included but are not limited to Vigil telling EquipmentShare employees he was interested in a job at EquipmentShare and his desire to pursue additional steps to obtain employment at EquipmentShare.

46. These misrepresentations and/or failures to disclose information were material to Plaintiff's employees in coordinating the meeting with Schlacks and Sullivan and were material to Schlacks' and Sullivan's decision to meet with Vigil.

47. At the time of Vigil's misrepresentations and/or failures to disclose material information, Plaintiff was not aware of their falsity and believed the statements to be true, and further took action in reliance on those statements.

48. The above-identified misrepresentations were false when made, were material to Plaintiff, and Vigil made them with knowledge of their materiality and falsity and to induce Schlacks and Sullivan to meet with Vigil. If Schlacks and EquipmentShare's employees knew the falsity of Vigil's representations or were aware of the information Vigil failed to disclose, they would not have communicated with Vigil or assisted to coordinate the meeting Vigil requested, and Schlacks and Sullivan would not have agreed to meet Vigil in June 2019.

49. Vigil had a duty to disclose the true motivations and falsity of statements made to EquipmentShare regarding a purported desire to learn about EquipmentShare for future employment when in fact the employees and agents knew the true and ulterior purpose: to spy on EquipmentShare, learn confidential and competitive business information, and to attempt to induce it to make purportedly unlawful statements. Such knowledge and information about Vigil's actual motive was not reasonably available to Plaintiff. Vigil took efforts to conceal such true motivations and false statements from discovery by Plaintiff.

50. In reliance on Vigil's misrepresentations and/or failures to disclose information, EquipmentShare's employees communicated with Vigil, and its CEO, Schlacks, and Vice President of Sales, Sullivan, met with Vigil.

51. Vigil had knowledge of the statements' falsity.

52. Vigil intended to induce Plaintiff's employees to act or refrain from acting upon the misrepresentation. Specifically, Vigil intended to induce Plaintiff's employees to set up a meeting with Schlacks and for Schlacks and Sullivan to attend a meeting with Vigil based on the misrepresentations and/or failures to disclose. Vigil sought to acquire confidential information about EquipmentShare's growth and competition strategies and to induce and entrap EquipmentShare's officers and employees into making purportedly unlawful statements by making these misrepresentations and/or failures to disclose.

53. As a result of Vigil's wrongful acts, EquipmentShare has suffered and/or will suffer harm, including the cost of Plaintiff's employees' and agents' time spent meeting with Vigil and other Ahern employees based on false pretenses. Additionally, Plaintiff's reputation has been damaged among potential and existing customers, business partners, investors, and prospective talent. Plaintiff has also suffered and may continue to suffer damages through the loss of current or prospective business relationships with investors, customers, business partners, and prospective talent based on Vigil's unlawful interception and disclosure of the oral communication and by Ahern's use of the information discussed to unlawfully compete with EquipmentShare.

54. Ahern is responsible for the torts committed by Vigil against EquipmentShare under the doctrine of *respondeat superior*.

55. Defendants' conduct was intentional, reckless, wanton, and in complete disregard of Plaintiff's rights and justifies the imposition of punitive damages.

## VI. RELIEF

WHEREFORE, Plaintiff requests relief as follows:

1. Judgment be entered in Plaintiff's favor and against Defendants on each cause of action.

2. Appropriate injunctive relief to which Plaintiff is entitled, including but not limited to enjoining Defendants and their officers, agents, servants, employees, owners, and representatives, and all other persons, firms, or corporations in active concert or participation with them, from recording any private meeting or conversation with EquipmentShare employees or agents without the informed consent of all parties or using any recording without EquipmentShare's consent.

3. Compensatory damages in such amounts as the Court deems just and proper.

4. Statutory penalties and damages in such amounts as the Court deems just and proper.

5. Punitive damages as allowed under Colorado law.

6. Costs and disbursements for this lawsuit, including reasonable attorneys' fees permitted by law.

7. Such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: December 18, 2020

By: /s/ *Michael E. Brewer*
Michael E. Brewer,
Cal. Bar No. 177912
michael.brewer@bakermckenzie.com
Billie D. Wenter
Cal. Bar No. 235193
billie.wenter@bakermckenzie.com
BAKER & McKENZIE LLP
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111
Telephone: 415.576.3000

Mark D. Taylor,
Tex. Bar No. 19713250
mark.taylor@bakermckenzie.com
BAKER & McKENZIE LLP
1900 North Pearl, Suite 1500
Dallas, TX 75201
Telephone: 214.978.3000


CAMPBELL LITIGATION, P.C.

By: /s/ *Stacey A. Campbell*
Stacey A. Campbell

1410 N. High Street
Denver, CO 80218
Telephone: (303) 536-1833
Email: stacey@campbell-litigation.com

**ATTORNEYS FOR PLAINTIFF EQUIPMENTSHARE.COM INC**